Good morning, everyone. We're very happy to have you all here. The first case of the day is No. 14-2034, and it's Hotel 71 v. National Retirement Fund. And Ms. Weiss. Good morning, Your Honors. May it please the Court, my name is Holly Weiss, and I represent the National Retirement Fund and its lawyers seeking reversal of the District Court's decision granting summary judgment in favor of the Oak Tree Parties and denying the NRF's motion for summary judgment. The District Court's decision hinged on its determination that Mezz Lender is not a trader business. That decision was wrong. The District Court did not properly apply this Court's precedence that established that a formally organized entity that engages in minimal activities like Mezz Lender is a trader business. Do you think it was a tactical error for NRF to move for summary judgment on such a minimal evidentiary record? In retrospect, given the judge's decision, it could be viewed as a tactical error. However, we believe that there was no real question but that Mezz Lender is a trader business. Well, you know, to decide that, you know, to decide whether it qualifies as a trader business, should our focus be on the loan that was made to the hotel, or should our focus be on Mezz Lender's assumption of ownership of the hotel, do you think? I think both of those activities are important and significant. In our view, the most important fact here is that Mezz Lender is a Delaware limited liability company with its principal place of business in Delaware. It made, as you noted, Your Honor, a commercial real estate loan in the amount of $27.3 million to H&S so that H&S could acquire a hotel. And for almost two years, that loan was outstanding. And then after H&S defaulted, Mezz Lender chose to acquire H&S through a UCC foreclosure sale. In addition to those activities, which are clearly not passive investment activities, they are active activities, Mezz Lender, to use its own language, heavily negotiated and contested the bankruptcy reorganization plan. Was there any sort of objection made in the bankruptcy proceeding about the potential discharge of withdrawal liability? Objection by the NRF? Not that I am aware of, Your Honor. In the bankruptcy proceeding, the NRF filed a contingent pre-petition proof of claim. That was, as a matter of law, notice to H&S, the debtor, and also to its controlled group members that there was withdrawal liability. Our position with respect to the release, if you'd like me to address that, is that the release in the bankruptcy proceeding did not cover and could not be read to cover the controlled group liability, which is separate and apart from H&S's direct liability that was discharged in the bankruptcy. I'd like to, just back on the trader business issue for a moment, note for the Court that consistent with this Court's precedence, including Fulkerson, which stated that applying the Gretzinger test, there are no interpreted difficulties when applying that test to a formally organized entity. There has been, in every case that has come before this Court that has involved a formally organized entity, the Court held the entity to be a trader business. And that in no case, in every case, it is never held that a formally organized entity is not a trader business. And there's only one district court in this circuit that goes the other way, and that's the Stroh Brewery case. That case involved a shell corporation that was dormant from the outset and engaged in absolutely no activity. Another point to make about the Stroh Brewery case is that it was a case that was cited by the Oak Tree Parties for the proposition that a controlled group member could be released in bankruptcy for the controlled group liability. That's not what the Court said. In fact, in that case, the successor to the debtor was released for the debtor's own withdrawal liability. There was no release given to the controlled group member for its own liability, which is joint and several, independent and direct. And those direct claims are the ones that are preserved pursuant to the second sentence of the release, the For the Avoidance of Doubt sentence. Ms. Weiss, my problem with this case is it seems to me to be a case management plan problem, not so much of a legal problem or a management problem, that no one anticipated what happens if your motion didn't get granted. No one said to the judge, well, okay, that's fine. You've given us this expedited schedule, but if that doesn't work, then we need to do this or that, and that didn't happen. That's troubling to me. Well, the only scheduling order that was issued by the District Court was the briefing schedule, which did not permit discovery. The NRF did not – And that's pretty unusual. Yes. So I would have expected your lawyers at the trial level to say, well, wait a minute, Judge, we think we're going to win that, but if we don't, then we need to do this or that. Well, that didn't happen. I think our view was that if we didn't win the summary judgment motion, the motion would simply be denied. It wouldn't be turned around into an implied summary judgment motion made by the Oak Tree Parties, which is really what happened here. Again, we thought there was no real question. It could not be genuinely disputed. The trader business issue could not be genuinely disputed by the Oak Tree Parties based on the facts that they submitted to the court on the motion and the facts that the District Court recited in its decision. Everything. I mean, it seems to me that every party must have been caught off guard. Well, we were surprised, and the judge recognized that we were surprised, and granting summary judgment by surprise is completely inappropriate. The issue on that point, even if Mezlender had made a motion for summary judgment on the trader business issue, it could not have prevailed. First of all, it did not submit any evidence showing that Mezlender was not a trader business. The District Court's conclusion that it was a passive investment entity is based simply on the absence of evidence, or I should say the purported absence of evidence, suggesting that it was a trader business. In fact, the only conclusion that the District Court could have reached from the facts that it considered relevant, i.e., that Mezlender is a limited liability corporation, is that it is highly unlikely that Mezlender is not a trader business. And that is what the language is from the SCOF BP case. I hope I said that correctly. My understanding is that none of the contribution payments have ever been missed. Am I misunderstanding you? I believe there may have been some delinquencies in contributions at some point in time. There was something about that. But that makes absolutely no difference. But those delinquencies were caught up? Frankly, I do not know. And it doesn't matter your position? Contribution delinquencies give rise to a separate cause of action related to those delinquencies. This is for withdrawal liability. It's a separate cause of action. And to the extent we're talking about any kind of issue relating to the amount of withdrawal liability, the payment schedule, whether there was a withdrawal liability trigger event, those are all questions that are subject to arbitration. All determinations that come up between Sections 4201 of ERISA and 4219, including Section 4204, which is the asset sale exemption, are all subject to mandatory arbitration. So the assertion by the Oaktree parties in their brief, which is really kind of color, it's not legal argument, that there was a no harm, no foul here, is just completely wrong. Well, I should probably ask the nice people at the other table this, but Meslinder itself had not asked the Court to grant summary judgment and had asserted that there were factual issues. Yes, exactly. The words were that the NRF's motion was premature and that there were a number of issues. The purpose of control group liability is to prevent the dissipation of assets to secure pension benefits. Protecting pension funds by holding the business owner in control of an insolvent employer jointly and separately liable for the employer's withdrawal liability is precisely what the ERISA control group provisions were designed to do. Based on the uncontroverted and admitted facts before this Court, this Court should have granted the NRF's motion for summary judgment. If there are no more questions, I will reserve the remainder of my time. Thank you. Thank you, Ms. Weiss. Thank you. Okay, Mr. Wilson, good morning. Good morning, Your Honors. A double good morning. Thank you, Your Honor. What? What? The clerk told me. Oh. Twenty-five years ago, Your Honor. No wonder I saw kisses going across the board. Should I begin? Please do. Thank you, Your Honor. May it please the Court, my name is Chris Wilson and I represent the Oak Tree Capital. So, okay, why doesn't lending money to a commercial hotel venture constitute a trader business as opposed to a passive investment? I mean, isn't an LLC organized to lend money a classic example of a business? Wasn't the loan intended to earn income? Yes. It was intended to earn income. That's the first part of the Grossinger test. The two prongs are, first, whether it was intended for income or profit, and second, whether the business was operated with continuity and regularity. That is where the district court properly found that we were not operating with continuity and regularity. The district court analyzed all the facts. Without discovery, how could the district court know this? He's clairvoyant. No, this is a risk that the parties run when they present undisputed facts and a motion for summary judgment. The question that Judge Tinder asked is accurate. There were nine months between the submission of the summary judgment briefs, the filing of the complaint in this action, and the decision by the district court. There was no bar on discovery. There was simply a briefing schedule. So are you saying that NRF waived its procedural rights, that NRF wasn't entitled to notice and an opportunity to respond before the judge entered summary judgment against it? Well, there is precedent in this court. Yes or no?  Yes or no? Yes, they did waive it. Think of me as Judge Posner. Yes or no? I should have started there. Judge Rogner, yes, they waived those rights. Or more appropriately, they ran the risk that the judge would determine on the undisputed facts that summary judgment was appropriate. There are multiple precedents in this court that summary judgment so is contact. So that will lead to a real discouragement on the making of motions for summary judgments if they can backfire on you and go the other way. Well, it's a possibility, but it certainly will discourage plaintiffs from trying to jump start, file a motion for summary judgment early, see if they can win, and then ask for discovery later. It probably will chill that practice, and it should. People should not rush into court. What about the argument you made at the trial court that there were disputed facts and genuine questions? Are you abandoning that argument now? Yes, on the way up here. It's important. We haven't abandoned that. But what we note is they presented two undisputed facts and said, based on that, it was sufficient to find that we were a traitor business. We said there were additional facts that the court should look at rather than just those two facts. But lending money to a commercial venture would, as a logical matter, certainly seem to constitute traitor business activity, would it not? No, not necessarily, Your Honor, because we're a single-purpose entity that was created solely for the purpose of extending this $27 million loan. So Hotel Mez Lender existed as a corporation for the sole purpose of extending $27.3 million to the Chicago H&S Hotel. It's organized as an LLC. Correct, but if organization were enough, the Sun Capital case would not exist. Sun Capital was the first circuit interpreting Fulkerson from this circuit. And what they determined was, yes, a private equity fund, Sun Capital, had created an entity and invested in a company, but they were going to interpret Fulkerson to require an investment-plus analysis. Was there something more than mere investment? I'm sorry, Your Honor. I'm sorry. Here the NRF has taken the position exactly what you've outlined, Your Honor. It's enough. If you've organized as an LLC, you're subject to withdrawal liability. The precedents don't support that. There has to be investment-plus. And Sun Capital is a very careful opinion from the first circuit, but interestingly interpreting all the precedent from the seventh circuit on this, from Fulkerson to Messina and others, and saying we think the test under Grotzinger, really in order to determine whether there's continuity and regularity and enough to trigger withdrawal liability, is there investment-plus. And all we have here is investment and then activity in connection with bankruptcy, which is consistent with protecting the loan. We were not involved in any way in the management of this company. We extended a passive loan, and we're hoping to recover our investment. Look, as always, I'm open to every argument. I really try to do that. But however slim or unpersuasive NRF's own request may have been in the district court's eyes, it didn't waive its procedural rights. It's entitled to the notice. It's entitled to the opportunity to respond. You know, who knows what might happen after discovery? Not I. It just seems to me that the gun was jumped, or it was jumping the gun, or something was jumping. Well, I have two responses to that, Your Honor. One is that the National Retirement Fund is a very sophisticated, very frequent litigant, and knew exactly what it was doing. It could have asked. Just didn't know who it was doing it in front of. Well, it knew that it was running the risk that a court could say, I have three motions for summary judgment in front of me, one by Hotel 71, a cross motion for summary judgment by the NRF, and a separate motion on the question of trade or business by the NRF. There are three motions for summary judgment. But there wasn't that fourth motion for the cross summary judgment on trade or business. Correct. So where did they get the notice that that was coming? Well, because under the precedents, in Goldstein in particular, this court said that Judge Koukouris was right as a matter of law to enter a summary judgment sua sponte, where a party had put all the undisputed facts in front of it. When you come before the court and say the facts are undisputed and I'm presenting enough, you run the risk of the court saying, you're right, I've looked at your undisputed facts and you lose on the law. And that's what happened here. They presented the undisputed facts and the court looked at them and said, you lose as a matter of law. In Goldstein, exactly the situation that Judge Rovner is alluding to occurred. The party lost and said, if I knew I was going to lose, I would have found a lot more disputed facts to present to the court. And this circuit, Judge Evans said, no, you don't get to do that. That's legal gamesmanship. And you need to, once you've put undisputed facts in front of the court, you can't say I should find additional facts if you're going to rule against me. In 2002, Judge Bauer in the Jones case said that summary judgment. What year was that? 2002. When is it you clerked? 1989 to 1990. But I was pleased to see that Judge Bauer was as accurate in his prescience in 2002 as he was in 1990. Oh, he's gotten so much smarter since then. No doubt. But in 2002 in the Jones case, Judge Bauer noted that granting summary judgment sua sponte does not violate any procedural safeguards when the litigants have put undisputed facts in front of the court. And that's exactly what the National Retirement Fund did. They said, we have all the facts we need, they're not in dispute, and we think we should win as a matter of law. Now they're saying, oh, but we can't lose as a matter of law. But that's simply not what the precedents in this court provide for. Well, Goldstein also said the party against whom summary judgment is entered must have noticed that the court is considering dropping the ax on him before it actually falls. The entry of summary judgment is inappropriate when it takes a party by surprise. Correct. But the important thing is the Jones case recognizes that filing the motion for summary judgment and cross motions for summary judgment is sufficient notice. Once you've taken that step, you should be aware that the court may rule that as a matter of law the undisputed facts that you presented are insufficient. Look, even the judge noted that he had taken the parties by surprise here. Correct. Judge Castillo noted that they were surprised by the ruling. But what he didn't note was that any procedural safeguards were violated or that their rights were violated. They had ample time, Your Honor, to file for discovery. Contrary to what counsel represented, there was no bar on discovery. There was simply a scheduling order that called for briefing. They were free to file Rule 26 disclosures, to seek discovery from us, to engage in the discovery process. Nothing barred that. And Judge Castillo noted that on the motion for reconsideration. You had plenty of time to come before me and ask for discovery if you thought there were additional facts that were important to your case. They did not do that. And they really shouldn't be allowed to come before this court now and say, we want a do-over. They are sophisticated litigants. They have been in multiple courts. They argue these issues all the time. And frankly, they were trying to create new law in this circuit. Is there anything on the record whereby we could see that the judge pointed to any facts indicating that Meslinder is not a traitor business? Yes. In his opinion? Yeah. Actually, Judge Castillo analyzed this very carefully. I believe it's at pages 22 to 27 of his opinion. But he looks at the question of whether it's a traitor business. Importantly, Your Honor, his decision is reviewed for clear error. He is looking at a mixed question of law and fact as to whether or not Hotel 71 Meslinder is a traitor business. He analyzes it from pages 24 of his opinion through 27. And importantly, all of the facts that counsel for NRF referred to, the fact that we engaged in a foreclosure sale, the fact that we were involved in the negotiation of the release and other parts of the bankruptcy plan, all of that constituted undisputed facts which were in front of the court when he ruled. So you would have to determine that his review of those facts was clearly erroneous. And there's simply not any basis to determine that that's clear error by Judge Castillo. He was very careful about this. But the big question, Your Honor, is, is it enough simply to be a corporate entity? And that's why counsel referred to the Stroh case. That's not a Seventh Circuit case. But that was one where there was a corporate entity, and they reviewed it and said, no, Stroh Brewery is simply a shell corporation and therefore not subject to withdrawal liability. If the rule that they wanted to impose, in which the one, Judge Rovner, that you were outlining was enough to just say, well, it's an incorporated entity, then Stroh Brewery would have come out the other way. But this circuit's precedents, particularly as interpreted in Sun Capital, provide for an investment plus analysis. In order to determine whether the business has been operated with continuity and regularity, you have to look at the investment plus other activities. And here the court looked at that and determined it was insufficient as a matter of law. Well, I wish I didn't feel that we don't have enough to review. And I wish I felt that the arguments were we to have that would be more focused. But there you go. Okay. Thank you, Your Honor. Thank you. Ms. Weiss, have you anything more to add? Yes, Your Honor. How much time does Ms. Weiss have? Ten minutes. How many? Two minutes. Two minutes and 50 seconds now. Go ahead. Thank you. I just would like to address first the standard of review here. It is clearly, not clearly, sorry, it is de novo. The court committed legal error, again, by improperly applying this court's precedents, both on the substantive issue of trade or business and also procedurally by dropping the ax on us, on the NRF, without giving notice and opportunity to be heard. The clear error standard that has been applied in certain ERISA cases, it's a narrow exception to the ordinary rule that de novo review is proper for summary judgment. And that's an exception that applies when all of the evidence is in and essentially the summary judgment decision is a decision on the papers. Classic example, lending. This was a commercial real estate loan. It's not as if they bought a bond. It's a commercial real estate loan. It's not as if it's what? It's not as if they bought a bond. Oh, bought a bond. Thank you. This is not a passive investment. The argument that you're bringing up Sun Capital, you know, by the way, in Sun Capital the investment fund, which was asserted to be a passive investment fund, was found to be a trade or business. This is a much easier case. We've got a commercial lender that engaged in active activities. On the discovery point, I would just like to address the fact that we didn't think we needed anything else. We didn't actually need anything else. There is ample evidence in the record, ample facts in the record, establishing trade or business status. And the reference to the Jones case and the Goldstein cases, in Goldstein the court found that it would be impossible for the movant to put any more, impossible for the movant to prevail. That can't be the case here because the only determination the court could have made was that it was highly unlikely that Meslinder was not a trade or business. And as with Jones, this was not a matter that was argued. It was not disputed by the Oaktree parties. It could not have genuinely been disputed by the Oaktree parties, given the evidence that the Oaktree parties put in themselves. It was an issue that was bypassed by the parties, or bypassed by the Oaktree parties. Unless your honors have additional questions? I think not. So thanks to all parties. Thank you very much. Thank you very much. The case will be taken under advisement.